IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| West Michigan Debt Collection , Inc., ) | |
| ) | |
| Plaintiff, ) | Case No. 17 C 04308 |
| ) | |
| vs. ) | |
| ) | |
| Gerald H. Weber, Jr., et al., ) | Judge Philip G. Reinhard |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons stated below, the motions of Holmstrom [56] and McGreevy [62] are granted in part and denied in part. The motions are granted as to Counts II, III, and IV and denied as to Count V. Counts II, III, and IV are dismissed without prejudice. Plaintiff shall file any amended complaint as to Counts II through IV on or before February 9, 2018.

## STATEMENT - OPINION

Plaintiff, West Michigan Debt Collections, Inc., a Michigan corporation with its principal place of business in Michigan, brings this action against defendants, Gerald H. Weber, Jr. ("Weber"), Ronald E. Swenson ("Swenson"), Patti Weber ("Patti"), Joann Swenson ("Joann"), Zachary Knutson ("Knutson"), Wildcat Capital Enterprises, LLC ("Wildcat"), North Rock Real Estate, LLC ("North Rock RE"), North Rock Development Partners, LLC ("North Rock DP"), First Boston Property Management Corporation ("First Boston"), Prairie Services, LLC ("Prairie"), HolmstromKennedy, P.C. ("Holmstrom") and McGreevy Williams, P.C. ("McGreevy") All defendants are citizens only of Illinois.[1] The amount in controversy exceeds $75,000. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a)(1).

Plaintiff is the owner of a Michigan state-court judgment against Weber and Swenson. This action is an attempt to realize on that judgment under various theories against various parties. Plaintiff seeks to register and enforce the Michigan state-court judgment against Weber and Swenson (Count I). Plaintiff also asserts claims for fraudulent transfers (Count II & III),

---

[1] Weber, Swenson, Patti, Joann and Knutson are each citizens of Illinois. Patti and Joann are the members of Wildcat. Patti, Joann and Knutson are the members of North Rock RE and North Rock DP. Weber and Swenson are the members of Prairie. First Boston is an Illinois corporation with its principal place of business in Illinois. Holmstrom and McGreevey are Illinois professional corporation with their principal places of business in Illinois.

1

fraud (Count IV), civil conspiracy and aiding and abetting (Count V), and asks for a declaratory judgment declaring certain defendants to be the alter egos of Weber and Swenson and for the piercing of the corporate veil as to certain defendants (Count VI). Holmstrom [56] and McGreevy [62] move to dismiss counts II through V against them pursuant to Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6).[2]

PNC Equipment Finance, LLC ("PNC") obtained a judgment against Weber and Swenson in case number 11cv4922 in the United States District Court for the Northern District of Illinois, Eastern Division ("PNC Case"), in the amount of $25,546,359.87. Patti, Weber's wife, and Joann, Swenson's wife, formed Wildcat. Wildcat then purchased PNC's judgment against Weber and Swenson, along with all PNC's "right, title, liens, encumbrances and interest in" citations to discover assets issued in that case against Weber and Swenson. Wildcat, Weber and Swenson then entered an agreed turnover order ("ATO") transferring assets of Weber and Swenson to Wildcat and crediting Weber and Swenson the sum of $500,000 against the outstanding judgment. Wildcat also caused wage deduction orders ("WDOs") to be entered directing North Rock RE to deduct during each pay period 15% of Weber and Swenson's non-exempt gross compensation until the judgment plus interest and costs is paid in full to Wildcat. These wage deduction orders "have priority over any subsequent wage deduction order or lien except for Spouse/Child Support Orders or Liens."

The complaint alleges the ATO was entered to render Weber and Swenson insolvent for the purpose of making them appear uncollectible to their legitimate creditors. The ATO effectively diverted all non-exempt assets and income of Weber and Swenson to Wildcat in order to frustrate their creditors' ability to collect from them. Attached to plaintiff's response to the motions to dismiss, are answers to wage deduction summonses served by plaintiff on Weber and Swenson in state court proceedings. In those proceedings, plaintiff registered its judgment against Weber and Swenson. It then served wage deduction summonses on North Rock RE. The answers filed by North Rock RE show the prior WDOs entered in favor of Wildcat in the PNC Case. The answers show no available wages payable to plaintiff because of the prior WDOs.

The crux of plaintiff's complaint is that the actions just described were undertaken to "indefinitely frustrate the attempts of legitimate creditors from collecting" against Weber and Swenson. Plaintiff contends all of the defendants played some role in this scheme and that their actions were unlawful.

The first matter to address is jurisdiction. Holmstrom and McGreevy separately move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction arguing the case against them is not ripe for adjudication. The court is "obligated to consider its jurisdiction at any stage of the proceedings and ripeness, when it implicates the possibility of [the] Court issuing an advisory opinion, is a question of subject matter jurisdiction under the case-or-controversy requirement." Wisconsin Cent., Ltd. v. Shannon, 539 F.3d 751, 759 (7th Cir. 2008)

---

[2] The motion of the other defendants will be addressed in a separate order.

2

(quotation marks and citations omitted). "Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as, prudential reasons for refusing to exercise jurisdiction." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 670 n. 2 (2010) (quotation marks and citation omitted). "In evaluating a claim to determine whether it is ripe for judicial review, we consider both the fitness of the issues for judicial decision and the hardship of withholding court consideration." Id. (quotation marks and citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction all well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. Citadel Securities, LLC v. Chicago Bd. Options Exchange, Inc., 808 F.3d 694, 698 (7th Cir. 2015). The court may "consider matters outside the pleadings, such as the exhibits attached to Plaintiff's Response." Cochran v. BMA Management, Ltd., No. 08-cv-0215-DRH, 2008 WL 4530692, * 2 (S.D. Ill. Oct. 7, 2008), citing, Roman v. U.S. Postal Serv., 821 F.2d 382, 385 (7th Cir. 1987).

Holmstrom and McGreevy argue plaintiff's claims against them are not ripe because plaintiff has not alleged it has made any failed attempt to collect its judgment from Weber and Swenson that failed because of an act by Holmstrom or McGreevy. Nor, they argue, has plaintiff alleged it has made any failed attempt to collect its judgment from Wildcat on a veil piercing or alter ego theory that failed because of an act of Holmstrom or McGreevy. They contend the claims against them are entirely speculative as the claims rest on a contingent future event that may not occur – plaintiff being unable to collect its judgment against Weber, Swenson or Wildcat. Plaintiff's only response to the lack of ripeness argument is that the "claims are ripe because the alleged conduct has siphoned all assets from Gerald Weber and Ronald Swenson that otherwise would be available to pay Plaintiff's judgment."

The complaint alleges McGreevy, as counsel for Weber and Swenson, submitted the ATO which had been prepared by Holmstrom, and that this was done to render Weber and Swenson insolvent for the purpose of making them appear uncollectible to their legitimate creditors. The ATO effectively diverted all non-exempt assets and income of Weber and Swenson to Wildcat in order to frustrate their creditors' ability to collect from them. The WDOs were prepared by Holmstrom. In Exhibit C to plaintiff's complaint, which is an order entered in the PNC Case, Judge Bucklo found that Wildcat had conceded that a Holmstrom attorney came up with the idea for forming Wildcat to purchase the PNC judgment. Attached to plaintiff's response to the motion to dismiss, are answers to wage deduction summonses served by plaintiff on Weber and Swenson in state court proceedings. In those proceedings, plaintiff registered its judgment against Weber and Swenson. It then served wage deduction summonses on North Rock RE. The answers filed by North Rock RE show the prior WDOs entered in favor of Wildcat in the PNC Case. The answers show no available wages payable to plaintiff because of the prior WDOs.

Considering the allegations in the complaint and the information contained in plaintiff's response to the motions to dismiss, plaintiff has sufficiently alleged a ripe controversy. Plaintiff

3

has shown an attempt to collect its judgment from Weber and Swenson that was thwarted by the prior WDOs and ATO. Neither McGreevy nor Holmstrom cite any authority for the proposition that the case is not ripe because the possible inability of plaintiff to collect its judgment from Weber, Swenson, and Wildcat is a contingent future event that may not occur. The court did not find any authority for such a proposition. The actions are alleged to have hindered and delayed collection of the judgment. The allegations of this present injury are sufficient. This case is ripe for adjudication and subject matter jurisdiction is secure.

Holmstrom and McGreevy each argue the complaint fails to meet the pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." They contend the complaint does not allege fraud with sufficient particularity.

> What is required in the way of particularity in pleading fraud depends on the purpose of imposing such a heightened requirement of pleading—so at odds with the notice-pleading theory of the federal rules. The purpose is to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual. In the typical commercial case there is a substantial interval between the filing of the complaint and the completion of enough pretrial discovery to enable the preparation and disposition of a motion by the defendant for summary judgment. Throughout that period a claim of fraud will stand unrefuted, placing what may be undue pressure on the defendant to settle the case in order to lift the cloud on its reputation. The requirement that fraud be pleaded with particularity compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless. It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims.

Fidelity Nat'l Ins. Co. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 748-49 (7th Cir. 2005) (citations omitted).

In support of its claims against Holmstrom and McGreevy, plaintiff relies extensively on a memorandum opinion and order entered by Judge Bucklo in the PNC Case and attached as an exhibit to plaintiff's complaint. Judge Bucklo's memorandum opinion and order is not dispositive of the issues here but, as an exhibit to plaintiff's complaint, it "is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), so its contents are part of the facts alleged in the complaint for purposes of the motion to dismiss.

In that order, the court granted the motion of First Midwest, a creditor of Weber and Swenson, to set aside the ATO for fraud on the court. Fed. R. Civ. P. 60(d)(3). Judge Bucklo found that, through Wildcat, Weber and Swenson perpetrated a fraud on the court, that the scheme for perpetrating the fraud originated with a Holmstrom attorney who furthered the

4

scheme by simultaneously working for Weber, Swenson and Wildcat, and that McGreevy (counsel for Weber and Swenson in the PNC case) played a key role in perpetrating the fraud. Judge Bucklo noted that several of the "badges of fraud" outlined in the IUFTA were evident in the case (transfer of assets to insiders; debtors retaining possession of assets after transfer; concealing the transfer; transfer made after debtor had been sued; transfer of substantially all debtors' assets. 740 ILCS 160/5(b)(1),(2),(3) & (5)). Judge Bucklo referred to those "badges of fraud" for illustration purposes only, as no substantive cause of action for fraudulent transfer was before the court. The only issue under consideration was whether the ATO should be vacated under Rule 60(d)(3) for fraud on the court. Plaintiff argues Holmstrom and McGreevy are liable here because they originated and participated in the scheme Judge Bucklo found in the PNC Case to exhibit the listed "badges of fraud" and to be a fraud on the court.

Plaintiff's argument goes most directly to Count V. While the IUFTA does not specifically provide for civil conspiracy or aiding and abetting causes of action, these claims may supplement claims under IUFTA. 740 ILCS 160/11; Rubbermaid Inc. v. Robert Bosch Tool Corp., No. 09-1395, 2010 WL 3834410, * 5 (C.D. Ill. Sept. 23, 2010). "[C]ivil conspiracy claims as well as aiding and abetting claims against non-transferee defendants where transfers were made as part of a scheme to defraud, hinder, or delay creditors" have been recognized under Illinois law. Id.; see also, Coleman v. Greenfield, 05-cv-3984, 2005 WL 2592538 (N.D. Ill. Oct. 11, 2005). Conspiracy claims are available against attorneys where attorneys participate in a conspiracy with their clients[3], Thornwood, Inc.v. Jenner & Block, 799 N.E.2d 756, 768 (Ill. App. 2003), as are aiding and abetting claims against attorneys who "knowingly and substantially assist their clients in causing another party's injury." Id.

The allegations of the complaint are sufficient to plead conspiracy and aiding and abetting causes of action (Count V) against Holmstrom and McGreevy. They are alleged to have been active participants in designing and executing the plan to divert effectively all of Weber and Swenson's non-exempt assets to Wildcat with the purpose of rendering them insolvent and apparently uncollectible. They are alleged to have worked together with Weber, Swenson, and Wildcat to get the ATO and WDOs entered in order to prevent legitimate creditors from realizing on the assets of Weber and Swenson. The WDOs resulted in no wages being available to plaintiff when it served its own wage deduction orders on Weber and Swenson's employer, North Rock RE. McGreevy and Holmstrom have enough information to know what actions of

---

[3] Holmstrom and McGreevy argue Illinois law does not recognize a conspiracy claim between an agent and its principal, Buckner v. Atlantic Plant Maintenance, Inc., 964 N.E.2d 565, 571 (Ill. 1998), and that because the attorney-client relationship is an agency relationship, no conspiracy is possible between attorney and client. However, Thornwood states that a cause of action for an attorney-client conspiracy is available. The court will not, based on what it has before it at this time, find that Thornwood has incorrectly stated Illinois law as to the availability of claims for attorney-client conspiracies. Holmstrom and McGreevy may re-visit this argument at a later stage of the case.

5

their's are claimed to have injured plaintiff. There is no basis in the record that suggests the pendency of these claims puts undue pressure on Holmstrom or McGreevy to settle these claims.

Count IV does not contain any specific allegations as to Holmstrom or McGreevy. Count IV alleges "all Defendants actively participated in the fraudulent scheme to hinder, delay and defraud the legitimate creditors" of Weber and Swenson. Holmstrom and McGreevy argue fraud is not properly alleged because fraud requires misrepresentations by them to the plaintiff and no such misrepresentations have been pled. Holmstrom and McGreevy are correct on this point. Plaintiff's use of the term "fraud" does not go to common law fraud, involving misrepresentations, but instead goes to participation in the plan for Weber and Swenson to violate IUFTA by making transfers to hinder or delay creditors. The allegations in this count appear to duplicate the Count V conspiracy/aiding and abetting claims. If plaintiff wishes to pursue an actual common law fraud claim, it will need to re-plead in order to provide sufficient factual allegations of the elements of common law fraud.

The complaint also alleges in Counts II and III that McGreevy and Holmstrom each were transferees of transfers that were fraudulent under the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/1 et seq.) ("IUFTA"). Holmstrom is alleged to have been "the payee of $300,000 that is deposited in Wildcat's account." Wildcat is alleged to have been directed by Weber and Swenson to pay Holmstrom and McGreevy from Wildcat's account "for debts that Wildcat does not owe including but not limited to attorneys fees" that were owed instead by Weber and Swenson. McGreevy and Holmstrom are alleged to have received payments from Wildcat knowing the transfers were part of a "fraudulent scheme to defraud" the creditors of Weber and Swenson. McGreevy and Holmstrom are alleged to have received transfers without providing reasonably equivalent value and to have received payments from Wildcat for legal fees incurred in representing Weber and Swenson rather than Wildcat.

The allegations as to fraudulent transfers to Holmstrom and McGreevy lack sufficient specificity. Plaintiff alleges Holmstrom was the payee of $300,000 that was deposited in Wildcat's account. This allegation is unclear. Is it alleging Holmstrom received $300,000 and then deposited it in Wildcat's account? If so, the complaint does not allege who paid Holmstrom this amount and it is not clear why Holmstrom depositing money into Wildcat's account would harm plaintiff. Or is it alleging $300,000 that was deposited into Wildcat's account by someone was paid to Holmstrom? If so, the source of the funds deposited is not identified. Was it Weber or Swenson?

Wildcat is alleged to have paid McGreevy and Holmstrom for debts owed them by Weber and Swenson. It is not clear why Wildcat paying a debt of Weber and Swenson is a fraudulent transfer. Is plaintiff claiming any transfer by Wildcat is fraudulent because all its assets are really the assets of Weber and Swenson? Are these transfers fraudulent because the legal fees were incurred for services rendered in carrying out Weber and Swenson's plan to hinder or delay their creditors? There are allegations the transfers were not for reasonably equivalent value. What facts lead plaintiff to this conclusion? There is not enough alleged to give McGreevy and

Holmstrom a clear enough understanding of which transfers they are alleged to have received that are claimed to be fraudulent under IUFTA.

      For the foregoing reasons, the motions of Holmstrom [56] and McGreevy [62] are granted in part and denied in part. The motions are granted as to Counts II, III, and IV and denied as to Count V. Counts II, III, and IV are dismissed without prejudice. Plaintiff shall file any amended complaint as to Counts II through IV on or before February 9, 2018.

Date: 1/17/2018                        ENTER:

                                           */s/ Philip G. Reinhard*
                                           United States District Court Judge

                                                       Electronic Notices. (LC)